**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

BONITA CLARK MURPHY,

      Plaintiff,                                     Case Numbers: 03-145, 04-103

v.                                                    Hon. Arthur J. Tarnow
                                                          Magistrate Judge: Ellen S. Carmody

LEE GILMAN, *et al.*,

      Defendants.
                                               /

**OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW [DE 316/156], DENYING PLAINTIFF'S MOTION FOR A NEW TRIAL [DE 319/159]; AND DENYING AS MOOT DEFENDANTS' MOTION TO STAY ENFORCEMENT OF JUDGMENT [DE 352/192]**

Before the Court are three Motions: Defendants' motion for judgment as a matter of law [DE 316 in Case No. 03-145/DE 156 in Case No. 04-103]; Plaintiff's motion for a new trial [DE 319/159]; and Defendants' motion to stay enforcement of judgment [DE 352/192].[1]

Hearings were held on the motions for judgment as a matter of law and for a new trial on December 6, 2007, and January 28, 2008. A telephone conference was held on April 3, 2008, as to the motion to stay enforcement.

The defendants' motion for judgment as a matter of law is denied, because the severe nature of the conduct of the defendants, which caused the death of Mr. Clark over an almost five day period with less than adequate food and periods of no water in overwhelming heat in a prison cell, supports the judgment as well as the punitive damages.

While the question is closer, Plaintiff's motion for a new trial is denied as well. The jury's verdict was not against the great weight of the evidence, which permitted "different inferences or

---

[1] On March 24, Defendants filed a motion to stay enforcement of the judgment. Following an April 3, 2008 conference call, the parties entered a stipulated order dismissing writs of garnishment against the individual Defendants. The Court entered the Order on April 4. Accordingly, this motion is now MOOT.

conclusions" by the jury. Accordingly, the Court cannot determine that the verdict was unreasonable and should be set aside.

## I. INTRODUCTION

### A. Factual Background

Plaintiff's decedent Mr. Jeffrey Clark died in July 2002, while incarcerated at the Bellamy Creek Correctional Facility of the Michigan Department of Corrections. On June 29, 2002, Mr. Clark collapsed while waiting out of doors in a line for the mess hall, and suffered an apparent seizure. Mr. Clark was then taken by wheelchair to an observation cell for what was referred to as "custody watch." Between the time of his placement in that cell and when he was found dead of dehydration over four days later, Mr. Clark received no medical care, and little water and food.

At the time, the facility was under heat alert, due to outdoor temperatures above 85 degrees. The observation cell had an unshaded Plexiglas window to the outdoors which could not be opened. The cell was located next to a laundry, which added further to the heat in the cell. The Bellamy Creek Facility is not air-conditioned.

The water to Mr. Clark's cell was turned off, after he allegedly flooded the cell. The duration that it was off is unknown. However, evidence was offered that the water was off for entire shifts at a time, and possibly for successive shifts. The water was still off, and the toilet was dry, when Mr. Clark was found dead.

During the four day time period, Mr. Clark was observed barking like a dog, yelling at the walls, and otherwise behaving strangely. Numerous witnesses reported that he repeatedly asked for water. They also noted that he was exercising vigorously, despite the heat, and even when not exercising, was covered with sweat.

Defendant Bayne observed Mr. Clark barking, drinking from the toilet, and punching the walls. However, she told Defendant Fox that she thought he was faking it, and being manipulative.

*Clark-Murphy v. Gillman*
Case Nos. 03-145, 04-103

Defendant Bayne's testimony at trial was not prepared, and her memory was not very good. Following a lunch break with codefendants, her memory was restored.

Mr. Clark had a history of schizophrenia. He was taken off medication, because he was in remission. However, the then treating doctor placed a note in his prison medical file that required Mr. Clark be immediately taken to a outside hospital emergency room if his symptoms returned, that is, if he came out of remission.

Testimony was offered that the reason Mr. Clark was in the cell was that he was awaiting medical attention. Although health care was allegedly called, no nurse or physician visited Mr. Clark during his entire time in that cell.

Two psychological assessment forms were completed by Defendant Fox for a mental health consultation. Fox, a prison psychologist, visited and spoke to Mr. Clark twice during his time in the cell. Fox's report indicated medical attention was needed, but he checked the form for non-emergency, which gave the medical staff 14 days to follow up. Fox never entered the observation cell, but either observed or spoke to Mr. Clark through the window in the cell door.

Prison procedures for segregation, due to behavioral issues, permit isolation in a cell. However, those procedures require daily visits by a nurse, and an hour a day outside the cell. No explanation was given for Mr. Clark's "custody watch" status, or for the failure to permit him to shower or leave the cell, or to be visited by a nurse. The conduct of the defendants was tantamount to torture.

While Mr. Clark was in the observation cell, slots in his door were kept closed. On one occasion, the slot was forcibly closed by Defendant Harvey, repeatedly, on Mr. Clark's hand or forearm. Defendant Harvey denied this on his first appearance as a witness, but after the defense finally found the requested video tape of the incident, he acknowledged that he did slam Mr. Clark's

3

arm in the food slot of the door.[2]  The video demonstrates Defendant Harvey's repeated use of his full body weight to close the slot on Mr. Clark's arm.



(Double click video thumbnail twice for full screen viewing.)  Bruising on the arm from just about the wrist to just below the elbow resulting from Harvey's actions was evident at the autopsy.

Mr. Clark was found dead at approximately 1:30 a.m. July 4, 2002.  Rigor mortis had already set in by the time emergency responders arrived on the scene, suggesting he had been dead several hours at that point.  The medical examiner's report indicated that the temperature in the cell at approximately 4:00 a.m. was 88 to 90 degrees.

### B.  Procedural History

Plaintiff filed the original action (Case No. 03-145) in March 2003, and entered an amended complaint two months later.  A second action (Case No. 04-103) was filed in August 2004.  Both cases were stayed in April 2005, pending appeals to the Sixth Circuit.

In February 2006, the Sixth Circuit reversed the district court's denial of qualified immunity as to four defendants, but affirmed the denial as to the remaining eleven:  Gilman, Whittaker, Wise, Harvey, Lauters, Bayne, Dowker, Foreback, Stout, VanderVlucht, and Fox.  *See Clark-Murphy v.*

---

[2]The defense did not provide the videotape in a useable form until mid-trial.  Their explanation was that while all videotapes were requested, no motion to compel had been filed.

*Clark Murphy v. Gilman*, *et al.*
Case Nos. 03-145, 04-103

*Foreback*, 439 F.3d 280 (6th Cir. 2006). In February 2007, the two cases were reassigned to this Court, under the status of visiting judge by designation.

The case was tried in Lansing, Michigan, before a jury starting on April 17, 2007, against the eleven remaining defendants, all represented by common counsel from the office of the Michigan Attorney General. The pretrial judge had ordered defense counsel to obtain a waiver of any possible conflict. None was found in the file. In the middle of trial this Court enquired about the joint representation. The defendants did not object. There were defendants who both denied wrongdoing, and pointed to the wrongdoing of co-defendants. One defendant admitted wrongdoing: During his trial testimony, Defendant Stout acknowledged his gross negligence, and sought forgiveness.

On April 23, 2007, during the trial, Plaintiff voluntarily dismissed Defendant Whittaker.

On May 4, 2007, the jury arrived at a verdict. It found that Defendants Harvey and Fox were deliberately indifferent to Mr. Clark's serious medical needs, in violation of his Eighth Amendment rights. On the state law claims, the jury found Defendants Harvey, Bayne, Stout, and Fox grossly negligent; and Defendant Harvey liable for intentional infliction of emotional distress. The jury awarded Plaintiff $250,000 in actual damages, and $2,500,000 in punitive damages.

## II. DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW

Defendants bring their motion for judgment as a matter of law under Fed. R. Civ. P. 50(b). The standard on review of a motion for judgment as a matter of law is

> the same deferential standard as the district court: "The motion may be granted only if in viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party."

*Radvansky v. City of Olmsted Falls*, 496 F.3d 609, 614 (6th Cir. 2007) (quoting *Gray v. Toshiba Am. Consumer Prods., Inc.*, 263 F.3d 595, 598 (6th Cir.2001)). Put another way, "[j]udgment as a matter of law is appropriate only when there is a *complete absence of fact* to support the verdict, so that no

5

*Clark Murphy v. Gilman*, et al.
Case Nos. 03-145, 04-103

reasonable juror could have found for the nonmoving party." *Moore v. KUKA Welding Systems & Robot Corp.*, 171 F.3d 1073, 1078 (6th Cir. 1999) (emphasis added).

The Defendants seek entry of judgment as a matter of law on five grounds. The Court finds none of those grounds meet the "deferential standards" of *Radvansky* and *Moore*. For the reasons stated below, Defendants' motion is DENIED.

### A. *Robinson* does not prevent a finding that Defendants Harvey, Fox, Bayne, and Stout were "the" proximate cause

First, Defendants Harvey, Fox, Bayne, and Stout apply Michigan's governmental immunity case law to argue that they were not grossly negligent because they were not "the proximate cause," as defined by *Robinson v. City of Detroit*, 462 Mich. 439, 613 N.W.2d 307 (2000). The gross negligence exception to Michigan's Governmental Immunity statute, M.C.L.A. § 600.1401, *et seq.*, requires finding that the tortfeasor was "the proximate cause" of a plaintiff's injuries. 613 N.W.2d at 317. The *Robinson* Court defined that phrase to mean "the one most immediate, efficient, and direct cause preceding an injury." *Id*. Defendants also cite *Livermore ex rel Rohm v. Lubelan*, 476 F.3d 397 (6th Cir. 2007), to demonstrate that the Sixth Circuit recognizes *Robinson*'s limitations on the gross negligence exception.

Defendants' proximate cause argument fails. First, the Sixth Circuit Court of Appeals expressly addressed this argument in this case. *See Clark-Murphy v. Foreback*, 439 F.3d at 292 ("Neither are the defendants correct in contending that Clark-Murphy cannot prove 'proximate cause between their actions and Clark's death.'" ).

Second, the *Robinson* and *Livermore* cases held their defendants' conduct not to be "the" proximate cause, by finding such cause instead in the conduct of third parties and that of the plaintiff himself, respectively. *See Robinson*, 613 N.W.2d at 319 ("The one most immediate, efficient, and direct cause of the plaintiffs' injuries was the reckless conduct of the drivers of the fleeing vehicles."); *Livermore*, 476 F.3d at 409 (citing *Robinson*, 613 N.W.2d at 319) ("Similarly, we

Case 1:03-cv-00145-AJT   ECF No. 374 filed 04/24/08   PageID.4865   Page 7 of 15

*Clark Murphy v. Gilman*, et al.
Case Nos. 03-145, 04-103

conclude that the proximate cause of Rohm's death was not Lt. Ellsworth's conduct, but rather Rohm's decision to disregard his promise to surrender unarmed and to set fire to his residence.").

By contrast, Defendants fail to explain what or whose alternative conduct is "the most immediate, efficient, and direct cause" of Mr. Clark's injuries and death. Instead, Defendants argue that because the jury apportioned fault across four Defendants, there is no *one* proximate cause. Therefore, the gross negligence exception to governmental immunity applies to none of them.

Defendants' argument would lead to the absurd result that where there were multiple wrong doers, none would be liable.

Here, sufficient evidence was offered to demonstrate that the four defendants' conduct resulted in the dehydration death of Mr. Clark. That conduct was therefore "the one most immediate, efficient, and direct cause preceding" his suffering and death. The gross negligence exception to governmental immunity was met.

### B. Damages for Intentional Infliction of Emotional Distress are available under Michigan's Wrongful Death Statute

Defendants' second argument, that judgment should be entered for Defendant Harvey on the Intentional Infliction of Emotional Distress ("IIED") count, because such claims are unavailable under Michigan's wrongful death statute, M.C.L.A. § 600.2922, is incorrect. Defendants misapply *Barnes v. Double Seal Glass Co., Plant I*, 129 Mich. App. 66, 341 N.W.2d 812 (1983).

The pertinent passage in *Barnes* states:

> The trial court erroneously assumed that plaintiffs' claim was derivative to decedent's claim under the wrongful death act. Plaintiffs' claim for intentional infliction of emotional distress *is made on their own behalf*, *for their own injuries*, for a tort directed at them rather than at their son. *The claim is not for wrongful death* and is not covered by § 2922 of the wrongful death act, M.C.L. § 600.2922[.]

129 Mich.App. at 75-76 (emphasis added). Here, the IIED count was not brought on Plaintiff's own behalf, but on the decedent's, Mr. Clark.

Furthermore, the ability to bring intentional infliction of emotional distress claims under the

*Clark Murphy v. Gilman*, *et al.*
Case Nos. 03-145, 04-103

wrongful death statute been re-confirmed since *Barnes*. *See*, *e.g.*, *Howard v. Calhoun County*, 148 F.Supp.2d 883 (W.D.Mich. 2001):

> Damages for conscious pain and suffering, including emotional distress, experienced by a decedent prior to death are recoverable as an element of compensatory damages under Michigan's Wrongful Death Act. M.C.L. § 600.2922(6). There is thus no reason, to the extent a valid claim for intentional infliction of emotional distress is made out, that plaintiff could not recover damages for Howard's conscious emotional distress prior to death.

*Id*. at 892 (citing *Brereton v. United States*, 973 F.Supp. 752, 757 (E.D.Mich. 1997)).

The Michigan Court of Appeals has also addressed IIED claims brought under the wrongful death statute. *See Tucker v. Meijer, Inc.*, 2005 WL 1048502, *1 (Mich.App. 2005). By analyzing the claim, and not rejecting it as invalid under the statute, *Tucker* may be read to support the availability of IIED claims under Michigan's wrongful death statute. *Id*.

*Howard* and *Tucker* make it clear that an IIED claim may be brought under Michigan's wrongful death statute. *Barnes* is inapplicable, and therefore provides no relief for Defendants.

## C. The Eighth Amendment verdict against Defendants Harvey and Fox is supported by the evidence

Defendants Harvey and Fox claim entitlement to judgment as a matter of law on the Eighth Amendment deliberate indifference claim, by arguing the verdict was unsupported by the evidence.

*Farmer v. Brennan*, 511 U.S. 825 (1994), held that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety[.]" *Id*. at 837. A plaintiff cannot demonstrate deliberate indifference using a "should have known" standard. *Weaver v. Shadoan*, 340 F.3d 398, 410–11 (6th Cir. 2003).

However, *Farmer* expressly discourages officials from "tak[ing] refuge in the zone between 'ignorance of obvious risks' and 'actual knowledge of risks.'" 511 U.S. at 842. The Court elaborates:

*Clark Murphy v. Gilman*, et al.
Case Nos. 03-145, 04-103

> Whether a prison official had the requisite knowledge of a substantial risk is *a question of fact* subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Id.* (emphasis added).

Here, evidence was offered at trial that Defendant Harvey kept Mr. Clark's water turned off, knew that Mr. Clark was not drinking, and knew the prison was on heat alert. That evidence, under *Farmer*, supports the jury's conclusion that Harvey knew of the obvious risks from those circumstances.

The evidence further showed that Defendant Fox gave Mr. Clark a very cursory examination the day before his death. He knew of Mr. Clark's psychosis, and saw Mr. Clark in a non-responsive condition. He completed a referral for psychiatric attention, but indicated on the form it was not an emergency. However, the prison medical records for Mr. Clark had a notation from the prison treating doctor that in the event Mr. Clark had any symptoms of recurrence of his schizophrenia, he should immediately be sent to an outside hospital emergency room. The testimony again supports a finding of deliberate indifference.

Against the criteria for granting judgment as a matter of law, reviewing all evidence in a light favorable to the non-moving party, and finding for the movant only in the complete absence of facts to support the verdict, Defendants' motion fails on the issue of deliberate indifference. The jury heard evidence that supported a knowledge of substantial risk on the part of both Harvey and Fox.

**D. Section 1983 permits an award of punitive damages under these circumstances**

Defendants challenge the award of punitive damages. They argue that punitive damages are unavailable under the Michigan wrongful death act.

For causes of action brought solely under the statute, M.C.L.A. § 600.2922, neither punitive nor exemplary damages are available. *Fellows v. Superior Products Co.*, 201 Mich.App. 155, 158, 506 N.W.2d 534, 536 (1993). However,

*Clark Murphy v. Gilman*, *et al.*
Case Nos. 03-145, 04-103

> *[f]ederal* standards govern the determination of damages under the civil rights statutes. Thus, punitive damages may be awarded under § 1983 *even where they would not normally be recoverable under the local law* in the state where the violation occurred.

*Gordon v. Norman*, 788 F.2d 1194, 1199 (6th Cir. 1986) (emphasis added).

*Gordon* states that the rule for awarding punitive damages is "when the defendant wilfully and intentionally violates another's civil rights or when the defendant acts with reckless or callous indifference to the federally protected rights of others." *Id*. (citing *Smith v. Wade*, 461 U.S. 30, 56 (1983)). *Gordon* adds that it is within the discretion of the fact-finder to evaluate "the nature of the conduct in question, the wisdom of some form of pecuniary punishment, and the advisability of a deterrent." *Id*.

Defendants' reliance on *Frontier Ins. Co. v. Blaty*, 454 F.3d 590 (6th Cir. 2006), is misplaced. *Blaty* addressed whether loss of enjoyment of life damages were available in an action for the wrongful death of an infant who died under foster care, but did not address punitive damages. It applied Michigan law because "if section 1983 is deficient in the provisions necessary to furnish suitable remedies and punish offenses against law," the court must look to common law. *Id*. at 598 (citing 42 U.S.C. § 1988).

However, as observed by *Gordon*, *supra*, § 1983 permits punitive damages, so there is no deficiency to be addressed. Furthermore, Michigan case law reflects the availability of punitive damages under § 1983 claims. *See Janda v. City of Detroit*, 175 Mich.App. 120, 129, 437 N.W.2d 326, 331 (1989) ("[P]unitive damages may be awarded under 42 U.S.C. § 1983 even where they would not normally be recoverable under the local law in the state where the violation occurred.") (citing *Gordon*, 788 F.2d at 1199-1200)).

Here, the jury found Defendants Harvey and Fox liable for deliberate indifference. Whether punitive damages applied was within the purview of the fact-finder, based on wilful or intentional violations of Mr. Clark's civil rights, or a reckless or callous indifference thereto. Based on the

10

evidence in this case, the jury had evidence before it that would permit such a conclusion. Punitive damages were correctly awarded, pursuant to §§ 1983 and 1988 and *Gordon*. The absence of provision for them under the Michigan wrongful death statute is irrelevant.

### E. The amount awarded was not constitutionally excessive

Defendants also argue that the punitive damage award was constitutionally excessive. In general, when a motion for remittitur is reviewed, the "award must stand unless it is (1) beyond the range supportable by proof; or (2) so excessive as to shock the conscience; or (3) the result of a mistake." *Gregory v. Shelby County*, 220 F.3d 433, 443 (6th Cir. 2000). None of those conditions are met.

On the issue of constitutional excessiveness, the parties agree that *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 587 (1996) and *State Farm v. Campbell*, 538 U.S. 408 (2003) are the precedents on point. "[C]ourts reviewing punitive damages" are instructed

> to consider three guideposts: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.

*Campbell*, 538 U.S. at 418 (citing *Gore*, 517 U.S. at 575).

Reprehensibility is analyzed against five factors:

> (1) whether the harm was physical or economic; (2) whether the conduct evinced an indifference to or reckless disregard for the health or safety of others; (3) whether the target of the conduct was financially vulnerable; (4) whether the conduct involved repeated actions; and (5) whether the harm was the result of malice, trickery, or deceit, or mere accident.

*Estate of Moreland v. Dieter*, 395 F.3d 747, 756-57 (7th Cir. 2005) (citing *Campbell*, 538 U.S. at 419).

Evaluating the facts here against *Moreland/Campbell*'s five factors supports finding a high degree of reprehensibility. The harm here was clearly physical, and clearly did evince a reckless

*Clark Murphy v. Gilman*, et al.
Case Nos. 03-145, 04-103

disregard for Mr. Clark's health and safety. While Mr. Clark was not *financially* vulnerable, he was physically vulnerable: whether or not he had access to fresh air and water during a heat wave was subject to the whims of employees of the MDOC.

On the issue of repetition, the conduct at issue continued over nearly five days, concluding in Mr. Clark's death. The harm was not the result of mere accident, but of malice as demonstrated by reckless disregard. The reprehensibility factors of *Campbell* militate in favor of a higher punitive award.

The second factor, the "disparity" criterion, is misleading under these circumstances. Defendants cite *Campbell* for the premise that ratios greater that "single digits" will rarely satisfy due process. This award is a 10:1 ratio. However, the compensatory damages here are misleadingly low. Mr. Clark lost his life as a result of Defendants' conduct. However, that life was undervalued, due to his mental illness, his race, and his status as a convicted prisoner. As this Court has previously observed, if a prisoner had been in the private sector, his economic damages would have been much higher. *Siggers-El v. Barlow*, 433 F.Supp.2d 811, 819 (E.D. Mich. 2006) ("Under the circumstances of this case, the Court will not use the low economic damages award to limit a punitive damages award that was otherwise justified by the reprehensibility of Defendant's behavior.").

In another prisoner civil rights case, the Sixth Circuit approved a 10:1 ratio ($300,000 punitive to $30,000 compensatory) as "reasonable." *Johnson v. Howard*, 24 Fed.App'x. 480, 487 (6th Cir. 2001). In *Johnson*, the plaintiff was a prisoner at Ionia Correctional Facility, who was beaten without provocation by a corrections officer, but survived. *Id.* at 484. The analysis performed in *Johnson* used the *Gore* criteria. *Id.* at 486.

*Johnson* noted that the last criteria of *Gore* was "comparison of the punitive award with other penalties imposed in similar cases." *Id.* This is not just to "civil penalties" imposed: *Johnson*

mentioned both the $5,000 fine and the incarceration range of 90 days to 10 years. *Id.* at 487.

Defendants suggest that the appropriate comparison here is to the penalties for "vulnerable adult abuse in the second degree," M.C.L.A. § 750.145n(2), or perhaps first degree, § 750.145n(1). Those crimes are punishable by four years and a fine of $5,000, or 15 years and $10,000. The *Johnson* court did not find that a range of penalties from 90 days and a "small fine," to a maximum $5,000 criminal fine rendered its $300,000 punitive award excessive. 24 Fed. App'x. at 487. It stated that "given the nature of Howard's misconduct, $300,000 does not seem to be an inappropriately large deterrent amount." *Id.*

While there has been no prosecution to date under either state law (manslaughter or second degree murder) or federal law (denial of civil rights), the penalty would be far greater than that discussed by the *Johnson* court.

Here, too, deterrence is an appropriate consideration. Under these circumstances, a ratio of 10:1 is not excessive. Again, *Campbell* states the ratio as the "disparity between the actual . . . harm suffered by the plaintiff and the punitive damages award." The harm suffered here was death, not some simple financial loss. Coupled with the reprehensibility of the conduct, the punitive damages award is not constitutionally excessive. Comparing *Johnson*'s award of $300,000 for a beating which the plaintiff survived, to Mr. Clark's five days trapped without physical necessities or medical care resulting in his death, $1,250,000 per Defendant is not constitutionally excessive.

### III. PLAINTIFF'S MOTION FOR A NEW TRIAL

Plaintiff argues both that the verdict was against the great weight of the evidence, and that the damages awarded are inadequate to compensate Plaintiff's decedent's estate. Plaintiff's argument is strong on both an emotional level, and in the recognition of the low value placed on a mentally ill person who commits a crime. That is especially so here, where until his mental illness developed at about the age of 17, Mr. Clark was an accomplished student and valuable family member.

*Clark Murphy v. Gilman*, *et al.*
Case Nos. 03-145, 04-103

A trial court should deny a motion for a new trial "if the verdict is one that reasonably could be reached, regardless of whether the trial judge might have reached a different conclusion were he the trier of fact." *Ealy v. City of Dayton*, 1996 WL 724368, *3 (6th Cir. 1996) (quoting *Powers v. Bayliner Marine Corp.*, 83 F.3d 789, 796 (6th Cir. 1996)). However, unlike a motion for judgment as a matter of law, a court must weigh the evidence, to evaluate whether a verdict is against the great weight of the evidence. *Id.* That is so because even if there is evidence to support the verdict, the court must evaluate whether evidence in opposition was so strong that the verdict is actually against the manifest weight of the evidence. *Id.* It is a close question.

Even so, "new trials are not to be granted on the grounds that the verdict was against the weight of the evidence unless that verdict was unreasonable." *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 820-21 (6th Cir. 2000). *Barnes* states that "if a reasonable juror could reach the challenged verdict, a new trial is improper." *Id.* at 821. Furthermore, echoing *Ealy*:

> [c]ourts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable.

*Barnes*, 201 F.3d at 821.

For the reasons stated on the record at the January 28, 2008, hearing, the jury's verdict, as to both liability and its award of damages, is not against the great weight of the evidence. The jury heard evidence that would have supported finding liability in all defendants, but which would have also supported "different inferences or conclusions" by the jury. Accordingly, the Court cannot determine that the verdict was unreasonable and should be set aside. The Plaintiff's motion for a new trial is DENIED.

## IV. CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED that Defendant's Motion to Stay Enforcement of Judgment [DE 352/192] is DENIED AS MOOT.

*Clark Murphy v. Gilman*, *et al.*
Case Nos. 03-145, 04-103

IT IS FURTHER ORDERED that Defendant's Motion for Judgment as a Matter of Law [DE 316/156] is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion for a New Trial [DE 316/156] is DENIED.

SO ORDERED.

s/Arthur J. Tarnow
Arthur J. Tarnow
United States District Judge

Dated: April 24, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 24, 2008, by electronic and/or ordinary mail.

s/Jodi Gerona
Deputy Clerk

15